(155 App. Div. 83.)

### DRUCKLIEB v. SAM H. HARRIS, Inc., et al.

(Supreme Court, Appellate Division, First Department. February 7, 1913.)

1. EQUITY (§ 3*)—UNUSUAL RELIEF—EQUITABLE RELIEF.

That an action was an unusual one, because based on unusual facts, did not deprive a court of equity of power to grant relief; it being a province of equity to apply settled rules to unusual conditions, to do equity between the parties.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 7–12; Dec. Dig. § 3.*]

2. CORPORATIONS (§ 121*)—SALE OF STOCK—FRAUD—REMEDIES.

Where the organizer of a business corporation agreed under certain contingencies to buy plaintiff's stock at a price dependent upon its book value, and subsequently fraudulently altered the books of the corporation so as to decrease such book value, the plaintiff was entitled to equitable relief requiring the books to be corrected; plaintiff's remedy at law being inadequate, since, in case he should elect to sell his stock to the defendant, he could not go behind the book entries, and also because lapse of time would increase the difficulty of proving the extent of the alterations.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 504, 505; Dec. Dig. § 121.*]

3. CORPORATIONS (§ 174*)—DEFINITION AND NATURE—DUTY OF STOCKHOLDERS.

A business "corporation" is in effect an incorporated copartnership, in which the stockholders hold to each other much the same obligations of fair dealing that one copartner bears to another.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 649–652; Dec. Dig. § 174.*

For other definitions, see Words and Phrases, vol. 2, pp. 1608–1621; vol. 8, pp. 7619, 7620.]

· Ingraham, P. J., dissenting.

Appeal from Special Term, New York County.

Action by Julius C. Drucklieb against Sam H. Harris, Incorporated, and others. From a judgment for defendants on the pleadings, plaintiff appeals. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Louis O. Van Doren, of New York City, for appellant.
George A. Ferris, of New York City, for respondents.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SCOTT, J. The pleadings consist of a complaint and a demurrer, and the defendants' motion for judgment thereon calls into question the sufficiency of the complaint.

[1] The action is in equity, and is an unusual one, because the facts upon which it is based are unusual. That, of itself, however, is not sufficient to condemn the complaint; for it is the distinguishing feature of equity jurisdiction that it will apply settled rules to unusual conditions, and mold its decrees so as to do equity between the parties. The facts, as detailed in the complaint, may be summarized as follows:

Prior to the year 1910 the defendant Sam H. Harris had been engaged for many years in the business of manufacturing cigars, and had invested therein about $35,000. In the year 1910 he determined to incorporate his business, and did so incorporate it under the name of Sam H. Harris, Incorporated, with an authorized capital stock of $100,000, only $75,000 of which it was proposed to issue at once. Desiring additional cash capital, he induced plaintiff to invest $20,000 therein. In anticipation of the organization of the corporation, Harris and the plaintiff entered into a written agreement, which is annexed to and forms part of the complaint. It was agreed between them, so far as they could by agreement control the action of the corporation, that plaintiff should be made secretary and treasurer of the corporation for five years at an annual salary of $2,400. Realizing, however, that no such agreement could bind the corporation, Harris personally undertook, in the manner hereafter specified, to indemnify plaintiff in case he should not be retained in office by the corporation. Harris agreed to assign to the corporation all the assets, good will, and other property belonging to his business at the estimated value of $55,000, which included an estimated value of $20,000 for trade-mark and good will, for which he was to receive 550 shares, of the par value of $100 per share. Plaintiff agreed to contribute in cash $20,000, for which he was to receive 200 shares of the capital stock, of the par value of $100 each. Harris agreed in addition to assign to plaintiff 73 out of his 550 shares, so that Harris should own and hold 477 shares, and plaintiff should own and hold 273 shares. It was further agreed that after the incorporation of the company the said Harris and plaintiff should enter into a new agreement, together with a trustee, whereby Harris should undertake, in effect, that if the directors of the company should not retain plaintiff as secretary and treasurer at the salary agreed upon, he (Harris) would at plaintiff's election purchase plaintiff's shares "at the existing book value of the same as shown by the books and business of the corporation at the time of such election." As a guaranty for his performance of this part of the agreement Harris agreed to deposit with the trustees 273 shares of the stock.

This agreement was carried out. The corporation was formed, the stock issued, and plaintiff was made a trustee, and elected secretary and treasurer at the salary agreed upon. Thereupon the plaintiff and Harris and a trustee entered into the agreement foreshadowed by the preliminary agreement, in which Harris again undertook that, in the

event of the failure of the stockholders of the corporation, Sam H. Harris, Incorporated, to. elect plaintiff a trustee, or to elect him as secretary and treasurer, or to retain him in that office, "then and thereupon, at the election of the party of the second part [plaintiff], to be evidenced by a writing delivered to the party of the first part [Harris] and the party of the third part [the trustee] by the party of the second part [plaintiff], the said party of the first part [Harris] shall and will purchase of the said party of the second part [plaintiff] all the shares of the capital stock of said Sam H. Harris, Incorporated, viz., two hundred and seventy-three (273) shares thereof, held, owned, and possessed by the party of the second part, at the then existing *book value* of said shares as *shown and established by the books* and business of said corporation at the time of such election." A similar agreement to purchase the shares from the personal representatives of plaintiff, in case of his death, at a value ascertained by the same standards, was incorporated into the agreement. Provision was also made for the deposit by Harris of 273 shares with the trustee to insure Harris' undertaking to purchase plaintiff's shares upon the happening of any one of the contingencies specified. The complaint states that after these agreements had been made, and in the month of July, 1912, Harris began negotiations whereby he sought to induce plaintiff to sell his stock for much less than the sum which plaintiff had invested in said corporation, and to induce plaintiff so to sell repeatedly declared that the stock was not worth par, nor more than 50 cents on the dollar, and that, unless plaintiff would sell his stock to said Harris, he, the said plaintiff, would lose the entire amount of his investment in said corporation. Harris offered him certain money, notes, and property said to be worth $10,000 for his stock, and upon his refusal to sell again threatened plaintiff with the total loss of his investment in the stock of said company.

It is alleged that before these attempts to compel plaintiff to sell were made the books of account of said corporation contained entries and items which showed that the book value of the capital stock of the corporation was approximately the par value of said stock, and that said entries fairly and reasonably represented the true and actual worth and value of the assets and property described by them. Continuing, the complaint alleges that Harris, without the knowledge or consent of plaintiff, individually or by means of others acting under his directions, and with the intention of causing the apparent book value of the capital stock to be much less than the actual value, falsely changed or caused to be changed the entries in the books of account, by writing off various amounts from the different accounts of assets, aggregating upwards of $22,000, which were transferred to the loss side of the profit and loss account; whereas in truth and fact the sums so written off represented assets and property fairly and reasonably worth the amounts theretofore stated on said books as their value.

It is further alleged that on August 1st the said Sam H. Harris and Cleveland A. Harris, his son, being a majority of the board of trustees of said corporation, voted for and adopted, as the act of the trustees, a resolution that "the trade-mark and good will, now carried up-

on the books of the company at a value of $20,000, be reduced to the nominal sum of one dollar"; whereas, as it is alleged, the said trademark and good will were reasonably and justly worth the said sum of $20,000. It is further alleged that all these acts were done wrongfully, for the purpose of showing a book value of the stock greatly less than the true value thereof, and in order to reduce and destroy in part the security afforded to plaintiff by his aforesaid contract with said Harris, and to lessen the liability and responsibility of said Harris to plaintiff under the said contract.

The relief asked is that the books be restored to the condition they were in before the alleged fraudulent alterations, that the resolution as to the trade-mark and good will be rescinded, and that the defendants be restrained from changing or altering the books in the future in any manner whereby the book value of the capital stock of the corporation be lessened contrary to the fact.

[2] Since the demurrer admits all the facts well pleaded, it must be assumed for the purpose of this appeal that the items of assets written off to profit and loss were really worth the amounts at which they stood before the books were altered, and that the trade-mark and good will were worth the sum of $20,000 at the time that their value on the books was changed to $1. Taking these allegations as true, it is not a violent presumption that the changes were made, as plaintiff alleges, for the purpose of reducing the apparent book value of the stock, so as to lessen Harris' liability and responsibility to plaintiff in case any one of the contingencies should arise under which Harris may be obliged to purchase plaintiff's stock.

We are of opinion that, under these circumstances, plaintiff is entitled to relief in equity. Harris has agreed that under certain contingencies he will buy plaintiff's stock, and has further agreed that he will so purchase at a price to be fixed, in part, at least, by a certain standard, to wit, the book value of the stock. He cannot be permitted arbitrarily or fraudulently to so juggle the books as to make the book value appear to be less than it really is, and, as against plaintiff, any attempt to do so must surely fail. The principal question is how plaintiff is to be protected against such an attempt. If a contingency should arise under which he would be entitled to elect, and should elect, to sell his stock to Harris, he would find difficulty in maintaining an action at law for more than the value of the stock as shown by the books; for he, as well as Harris, agreed upon that standard of value, and in an action at law he could not go behind the books and show that the entries therein did not honestly represent the true value of the stock. His remedy at law, therefore, against Harris' attempted fraud, would be inadequate, and to obtain complete relief he must at some time and in some form of action resort to equity. Nor is it necessary that he should wait until the time comes when Harris can be compelled, under his agreement, to buy the stock. The parties agreed upon the "book value" as the standard of price, and plaintiff is entitled to have that standard maintained honestly and without fraud at all times. It would be highly inequitable to compel him to wait until Harris, who controls the corporation, sees fit to discharge him, or,

worse yet, until plaintiff dies, and the right to sell the stock to Harris passes to his personal representatives; for by the lapse of time the difficulty of proving the extent of the falsification of the books might be enormously increased.

[3] We find no difficulty in the fact that the purpose of the relief sought is to change the books of a corporation. That corporation is one of the kind which have greatly increased in late years, and concerning which we have heretofore had occasion to write. It is in effect nothing more than an incorporated copartnership, in which the stockholders owe to each other much the same obligations of fair dealing that one copartner bears to another. We think that the complaint, although, as has been said, the action is unusual, states a good cause of action for such appropriate equitable relief as the facts developed on the trial may justify.

The order appealed from must therefore be reversed, with $10 costs, and disbursements, and the motion denied, with $10 costs, with leave to defendants to apply at Special Term for permission, upon proper terms, to withdraw the demurrer and answer.

McLAUGHLIN, CLARKE, and DOWLING, JJ., concur.

INGRAHAM, P. J. (dissenting). The agreement upon which this action is based was an individual agreement between the plaintiff and Sam H. Harris individually. It was therein recited that the defendant Harris had requested the plaintiff to invest the sum of $20,000 in cash in a business which had been theretofore conducted by Harris; and that it was proposed that a corporation should be formed to which Harris should assign all the assets, property, trade-marks and good will of the business theretofore conducted by him; that Harris should become the majority stockholder in that corporation, and the plaintiff should become a minority stockholder therein; and that the defendant Harris had agreed to protect the plaintiff in the event that the plaintiff should not be retained by the board of directors of said corporation in the office of secretary and treasurer thereof at the full salary of $2,400 a year. It was agreed that Harris should convey his business to the corporation, and that the plaintiff should subscribe $20,000 to the capital stock of the corporation, to be paid in cash as therein provided. The defendant Harris was to enter into an agreement with the corporation to act as president at a salary of $5,000 a year, and the plaintiff would enter into a contract with the corporation to serve as secretary and treasurer thereof for the term of five years at a salary of $2,400 per annum. It was further agreed that in the event of any breach by the corporation or its board of directors of said agreement, or in the event of the election of the plaintiff at any time after the expiration of five years to sell his stock in said corporation, the defendant Harris would purchase the said stock "at the existing book value of the same as shown by the books and business of said corporation at the time of said election." The plaintiff is still acting as secretary and treasurer and in receipt of his salary, and Harris is acting as president of the corporation and in receipt of his salary. The

corporation is not a party to this agreement, and has never formally adopted it, or become bound by it.  The plaintiff brings this action to reform the books of the corporation, because, as he alleges, Harris has fraudulently and unjustifiably altered the books of the corporation, so as to depreciate the book value of the stock on the books of the corporation, and he asks that the court should in this action compel the corporation to change the entries in its books, so as to show that the stock has a greater value than is now shown on the books.

I do not see that this corporation, which is not a party to the agreement, can be compelled to alter its books so as to show that it has a greater capital invested in the business than the books now show, in order to enable the plaintiff to compel the defendant Harris to pay a greater sum of money for his stock in the event that he would be entitled to compel Harris to purchase it.  There is no attempt to reform the agreement under which the plaintiff has acquired whatever right he has against Harris; but the court is asked, if it determines that certain entries in the books of the corporation do not correctly describe the assets of the corporation or their value, to modify the books so as to express what the court should think from the evidence would be the correct market value of the property of the corporation.  I know of no right that a court of equity has to thus interfere with the books of a going corporation because two of its stockholders have made an agreement by which one is to acquire certain rights, dependent upon what is shown on the books, and I therefore think that the complaint states no cause of action.